## ATTACHMENT A

### AFFIDAVIT

I, Justin P. Niedzwecki, Special Agent with the Federal Bureau of Investigation, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been for approximately 8 years. Currently, I am assigned to the FBI's Resident Agency in Oxford, Mississippi. During this time, I have had extensive training and experience in the investigations of violent crime, gangs, and public corruption. This training and experience includes evidence gathering and interviewing victims, witnesses, and suspects. The information contained in this affidavit is the result of my own investigation and information provided to me by other law enforcement officers. Because it is being submitted for the limited purpose of demonstrating probable cause, this affidavit does not contain all of the information known to me and/or other law enforcement officers involved in this investigation.

### INTRODUCTION

2. There is probable cause to believe that Xaveriana Cook committed violations of Title 18, United States Code, Section 922(i), transportation of stolen firearms in interstate commerce; Title 18, United States Code, Section 922(j), possession of stolen firearms; and Title 18, United States Code, Sections 2 and 1114, aiding and abetting another in the attempt to kill an officer of the United States while such officer is engaged in the performance of official duties.

### DETAILS

3. On May 7, 2020, Lawrence County, Arkansas Sheriff's Department Deputies were

dispatched to 50 Lawrence Road 2741, Smithville, Arkansas. Deputies located the body of James Sartorelli, a/k/a, "Caveman" who was deceased with a gunshot wound to his head. Deputies interviewed Andrew Capps, an acquaintance of Hunter Carlstrom, who advised that Carlstrom and Xaveriana Cook came to his residence on May 5, 2020, prior to midnight, in a Black Chevrolet Malibu. Capps stated that Carlstrom told him that he and Cook were at Sartorelli's residence prior to arriving at Capps' residence and that he had just killed Sartorelli. Carlstrom also admitted to Capps that he stole approximately $6,000.00 in cash and firearms from Sartorelli. Capps stated that Carlstrom paid him $1,000.00 and gave him two firearms to set fire to Sartorelli's residence in order to dispose of the body and the evidence.

4. Law enforcement in Arkansas determined that Carlstrom stole the following known firearms from Sartorelli's residence:
    i. a Keltec, Model Sub 2000, 9mm rifle, S/N FFH164, black in color,
    ii. an SKS style semi-automatic rifle, unknown S/N,
    iii. a 12 gauge pump action shotgun,
    iv. a .22 caliber bolt action rifle, and
    v. a 9mm Walther semi-automatic pistol.

5. Capps admitted to possessing two of the stolen firearms given to him by Carlstrom shortly after the murder of Sartorelli. Deputies executed a search warrant on the property where Capps had hidden the firearms. During the execution of the said search warrant, two of the aforementioned stolen firearms were recovered: the 12 gauge pump action shotgun and the .22 caliber bolt action rifle.

6. Law enforcement in Arkansas obtained court orders to track Carlstrom and Cook's cellular

phones. Absence of cellular activity on the devices led law enforcement to believe that the devices were disabled to avoid detection.

7. Law enforcement in Arkansas interviewed Deborah Ferguson, who is believed to be a relative of Andrew Capps and friend of Carlstrom's father, who informed law enforcement she had heard Hunter Carlstrom state that he "would not go back to prison" and "would shoot a cop in the face." Law enforcement interviewed Carlstrom's father, William Carlstrom who informed law enforcement that his son had contacted him asking for help and told him that he had "fucked up." William Carlstrom stated that he knew his son had robbed and killed "Caveman." William Carlstrom also advised that his son stated he would not go back to prison and that he would shoot a cop.

8. Law enforcement in Arkansas interviewed Mark Allen, Xaveriana Cook's grandfather. Allen stated Cook contacted him and communicated that Carlstrom and her were not using their cellular phones.

9. On May 11, 2020, a Judge in the Circuit Court of Lawrence County, Arkansas signed a warrant for the arrest of Hunter Carlstrom for the murder of James Sartorelli in the first degree.

10. On May 12, 2020, Detective Eric Cheatham with the Lawrence County Sheriff's Department requested the assistance of the United States Marshal's Service in locating and apprehending Carlstrom.

11. On May 14 and 15, 2020, phone location data showed that Carlstrom's cellular phone had been located in the vicinity of Calhoun County and Lafayette County, Mississippi. On May 15, 2020, phone location data showed Carlstrom's cellular phone in Calhoun County with movement in a northerly direction towards Lafayette County.

3

12. On May 15, 2020, in Lafayette County, Mississippi, a Task Force Officer with the Gulf Coast Regional Task Force observed the black Chevrolet Malibu bearing license plate, BG 98665, registered to Xaveriana Cook. Marshals conducted a traffic stop on Cook's vehicle, which she was driving. During the traffic stop, Carlstrom shot a Deputy United States Marshal. The Deputy United States Marshal was immediately transported to the local hospital and sustained severe internal injuries as a result of the gunshot wound which required immediate surgery.

13. Carlstrom was ultimately shot and died on the scene. A Glock, model 19, Gen 5, 9mm caliber, semi-automatic pistol, s/n: BFLL859 was recovered from the scene. Agents determined from a query of the National Crime Information Center (NCIC) that the firearm was stolen in early May from a different residence on the same street where James Sartorelli a/k/a "Caveman" resided.

14. Law enforcement officers on scene noticed a cellular phone ringing in the driver's door of Cook's vehicle. Agents took possession of the cellular phone, placed it in airplane mode, retrieved the identifying information of the phone (but did not search the contents) and connected the phone to a charger to maintain battery life. The cellular phone and Cook's vehicle were transported to the Mississippi Bureau of Investigations Crime Scene Processing Bay, at 22000-B Highway 35 North, Batesville, Mississippi 38606.

15. On May 15, 2020, Agents interviewed Xaveriana Cook at the Lafayette County Detention Center. After being read *Miranda* warnings, Cook agreed to waive her rights and speak to Agents.

16. Cook stated the following: On May 5, 2020, Cook and Carlstrom were at Carlstrom's father's residence in Arkansas. Cook stated that Carlstrom told her that he was going to

4

"kill Caveman." Carlstrom left in Cook's black Chevrolet Malibu. Cook indicated that sometime later Carlstrom returned to the residence and told Cook to get clothes. Cook provided to agents that when she got into the vehicle, she saw money, and Carlstrom stated, "I killed Caveman." Cook asked how Carlstrom killed Caveman, to which Carlstrom replied that he shot him in the face. During the interview, Cook told Agents at some point that she saw four firearms, money, and drugs which Carlstrom had stolen from Caveman. Cook stated that Carlstrom had told her multiple times prior to the murder that he was going to kill "Caveman," because he was a drug dealer who had a large amount of money, drugs, and firearms.

17. Cook stated that a short time after getting into her vehicle, she and Carlstrom traveled to Andrew Capps' residence in Arkansas. Cook provided that the first thing that Carlstrom told Capps was, "I killed Caveman." Cook stated that Carlstrom provided Capps with $1,000.00 cash, drugs that looked like crystals, one firearm, and told Capps to set Caveman's house on fire.

18. Cook indicated that following the murder, she and Carlstrom traveled from Arkansas, through Tennessee into Mississippi. Cook further provided that she had traveled with Carlstrom willingly and in her vehicle (the aforementioned black Chevrolet Malibu). Cook stated that on May 7, 2020, she and Carlstrom arrived at 207 Richards Street, Vardaman, Mississippi 38878 to stay with friends. Cook provided that they stayed in Mississippi from May 7, 2020 until May 15, 2020. At some point during the stay at 207 Richards Street, Cook saw Carlstrom leave two long guns at the residence at 207 Richards Street.

19. Cook provided that between May 5, 2020 and May 15, 2020, Carlstrom stated he could not go back to jail because he had previously spent thirteen years in jail. Carlstrom continued

5

by saying if he and Cook ever were pulled over by law enforcement, he would have a "blow out" (shootout) with cops. Cook provided, "He said it a lot."

20. At some point during the aforementioned time period, Cook provided that Carlstrom bought her a ring and numerous other items. Carlstrom also bought a cellular phone/phone card and other items for himself. Cook indicated that all of the above items were purchased using the money Carlstrom had robbed from Caveman during the murder.

21. On May 15, 2020, Agents traveled to 207 Richards Street, Vardaman, Mississippi. When agents arrived to make contact with residents, agents noticed two vehicles in the driveway. The residence was dark with no lights illuminated. Agents knocked on the front door, and no one answered. A neighbor indicated that those were the residents' vehicles and believed they were in the residence. Agents knocked on the front door again with the same result, left the residence, and then returned later with deputies in marked units from Calhoun County Sheriff's Department.

22. When Agents and deputies in marked units returned, the assisting deputies proceeded to the back of the residence and knocked on the back door. Upon knocking, the back door opened because it was apparently not completely closed. Due to the violent nature of the murder/robbery of Sartorelli and attempted murder of the Deputy United States Marshal, agents were concerned for the safety of the residents. As such, agents entered the open back door and conducted a safety welfare sweep of the residence. During the sweep, Agents noticed two firearms in plain view. Agents cleared the residence and found no injured or deceased persons. Agents then vacated the inside of the residence and secured the outer perimeter. Agents and deputies then sought and received a court-authorized search warrant for the said residence. Upon executing the search warrant, agents located (1) the

aforementioned Keltec, Model Sub 2000, 9mm rifle, S/N FFH164, (2) an SKS style semi-automatic rifle, and (3) assorted ammunition. The Keltec 9mm rifle seized matches the serial number of the firearm that was reported stolen from Sartorelli's residence. Furthermore, an SKS style semi-automatic was also reported stolen with the Keltec. As such, your affiant believes that these are two of the firearms stolen by Carlstrom during the murder/robbery of Sartorelli and are believed to be the "two long rifles" that Cook described in her interview. Agents also saw a wallet containing Carlstrom's driver's license in it. Beside the wallet, Agents saw an iPhone and Andrew Capp's driver's license.

23. Because Cook knew that Carlstrom had committed the murder in Arkansas and knowing that he had stolen firearms, money, and drugs from Sartorelli, she nevertheless drove Carlstrom in her vehicle from the State of Arkansas where the murder occurred through Tennessee and into Mississippi knowing that it was his intention to kill law enforcement officers if approached, pulled over, or apprehended. Based on training and experience, I respectfully submit that in so doing, she materially and knowingly committed, and assisted Carlstrom in committing, at least three Federal crimes. Xaveriana Cook jointly possessed stolen firearms, knowingly transported stolen firearms in interstate commerce in her vehicle, and knowingly aided and abetted Carlstrom in attempting to kill a Deputy United States Marshal.

## CONCLUSION

Based on the aforementioned facts and circumstances, your Affiant believes that probable cause exists for the arrest of Xaveriana Cook.

Justin P. Niedzwecki
Special Agent
Federal Bureau of Investigation

Attested to me by telephone in accordance with Fed. R. Crim. P. 4.1, RP

~~Subscribed and sworn before me~~ this 16th of May, 2020.

UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF MISSISSIPPI